IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA PADGETT, | No. CIV S-10-2412-CMK |
| Plaintiff, | |
| vs. | ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are plaintiff's motion for summary judgment (Doc. 20) and defendant's cross-motion for summary judgment (Doc. 21). For the reasons discussed below, the court will deny plaintiff's motion for summary judgment or remand and grant the Commissioner's cross-motion for summary judgment.

/ / /

/ / /

1

# I. PROCEDURAL HISTORY[1]

Plaintiff applied for social security benefits in June 2006, alleging an onset of disability on July 15, 2005, due to disabilities including severe depression, severe neck and back pain, and herniated disc in neck. (Certified administrative record ("CAR") 25-26, 85-87, 95-100, 106-13, 441-42, 444-51). Plaintiff's claim was denied initially and upon reconsideration. Plaintiff requested an administrative hearing, which was held on April 10, 2008, before Administrative Law Judge ("ALJ") Theodore T. N. Slocum. In a June 10, 2008, decision, the ALJ concluded that plaintiff is not disabled[2] based on the following findings:

---

[1] Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the undersigned does not exhaustively relate those facts here. The facts related to plaintiff's impairments and medical history will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation

1. The claimant meets the insured status requirements of the Social Security Act though December 31, 2009.

2. The claimant has not engaged in substantial gainful activity since July 15, 2005, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairments: chronic neck pain, moderate C5-6 degenerative changes with spurs impinging on the intervertebral foramina bilaterally, L5-S1 grade 1 spondylolisthesis with moderate degenerative disc changes, and panic disorder, bipolar disorders and pain disorder with psychological and physical factors. (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except lifting 30 pounds occasionally and 15 pounds frequently, avoiding climbing ladders/ropes/scaffolds and crawling, low stress tolerance, not work in a heavily male work environment, and low stress non-public work.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on September 10, 1971 and was 33 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant

---

process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

        numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11.    The claimant has not been under a disability, as defined in the Social Security Act, from July 15, 2005 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(CAR 16-25). After the Appeals Council declined review on July 9, 2010, this appeal followed.

## II. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is "such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

/ / /

## III.  DISCUSSION

Plaintiff argues the ALJ erred in two ways:  (1) the ALJ failed to accord the appropriate weight to the opinion of plaintiff's treating physician; and (2) the ALJ improperly determined that plaintiff was not credible.  Due to these errors, plaintiff alleges the ALJ's determination of her residual functional capacity (RFC) was erroneous, as was his determination that she could perform work existing in significant numbers in the national economy.

### A.  MEDICAL OPINIONS

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given to the opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether:  (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).  A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence.  See Lester, 81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of

the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional.  See id. at 831.  In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

        Plaintiff argues the ALJ erred in rejecting the opinion of her treating doctor, Dr. Long, without clear and convincing or specific and legitimate reasons.  She argues the reasons the ALJ provided are not supported by the evidence.  Specifically, she states the chart notes from Butte County mental health do contain findings to support Dr Long's opinion, and that the ALJ either ignored or mischaracterized the supporting findings.  In addition, plaintiff contends that the ALJ's reliance on the consultative examiner's opinion, Dr. Canty, was inadequate as Dr. Canty examined plaintiff two years before the hearing, prior to her receiving mental health treatment from Dr. Long and prior to her hospitalization for suicidal ideation in October 2006.[3]  Finally, plaintiff suggests there is no inconsistency with her limited daily activities and the limitations assessed by Dr. Long.

        The only opinions at issue here are Dr. Long's and Dr. Canty, related to plaintiff's mental health.  The ALJ's determination related to plaintiff's physical disabilities and limitations are not challenged.  Dr. Canty examined plaintiff on September 18, 2006.  Prior to Dr. Canty's examination, plaintiff had not received mental health treatment, which is indicated in Dr. Canty's

---

[3] Plaintiff further argues the Dr. Canty did not review any medical records upon his examination of plaintiff.  The undersigned finds this an inaccurate statement.  Dr. Canty's report indicates he did not have mental health records to review, but that "[t]here were records from [plaintiff's] primary care doctor commenting on her mental state." (CAR 370).

1  report wherein he stated there were no psychiatric records to review, but that he did review her

2  records from her primary care doctor which commented on her mental state. Dr. Canty's mental

3  status examination revealed plaintiff was well groomed, but arrived slightly late to the

4  appointment. Her speech was clear and she was cooperative. Her thoughts were clear, logical

5  and goal-directed. She denied psychosis, suicidal or homicidal ideation, and she had not

6  participated in self abuse. Plaintiff described her typical mood as always changing, and that her

7  mood could vary from minute to minute. She described an undercurrent of chronic irritability.

8  During the interview, she appeared happy with a full affect. She was oriented to day, month and

9  year. She could immediately recall six digits forward and four in reverse; she could recall three

10 out of three objects at five minutes. Her fund of knowledge was good. She was able to complete

11 serial 3's from 20, but did it very slowly. She was able to follow directions to draw a specific

12 picture and did so while continuing with the examination. Dr. Canty's diagnosis was pain

13 disorder with psychological and physical factors versus mood disorder not otherwise specified.

14 (CAR 371-72). Dr. Canty found plaintiff:

> had a difficult childhood and perceives that her mother abandoned her.
> This has clearly colored her adult experiences, but I don't think she
> qualifies for a personality disorder. She shows fairly good insight into her
> current issues and would make an excellent psychotherapy candidate. She
> has a variable mood with an undercurrent of irritability. This has
> worsened throughout the years. Her medical records indicate that she has
> tried numerous antidepressants without benefit[] from any. I doubt that
> her mood symptoms will respond to medication as they are based on past
> experiences and current stressors. She did quite will in the exam.

20 (CAR 373. His medical source statements included the following:

> She is able to manage money. She does have some level of low stress
> tolerance. I don't think that she could successfully work with the public,
> at least not in the long term. She could get along with a few coworkers
> and supervisors and seems friendly. She may not be able to work in a
> heavily male environment. She should do low stress nonpublic work. She
> says that when she was very young she worked in an office, but found this
> quite boring. She could tolerate a return to this type of work from a
> psychiatric standpoint. Her emotional symptoms would not prevent her

25 ///

26 ///

7

from attending work that was appropriate. However, if she attempted high stress or inappropriate work I suspect her irritability would flareup quite dramatically.

(CAR 373).

The ALJ summarized[4] Dr. Long's treatment notes as follows:

Records from Butte County mental health document she was first seen October 10, 2006 for depression, anger, racing thoughts, and crying spells. The MSE was normal except for a depressed/flat affect and mood, suspiciousness and poor memory. October 20, 2006[5] GAF was rated at 55, November 14, 2006 MSE was normal and diagnoses were panic disorder/chronic pain affecting mood, rule out dysthymic, recurrent major depressive episode, and bipolar II, November 21, 2006 she denied suicidal ideation, had been somewhat depressed, was able to get along better with family and significant other, and medications were helping, December 19, 2006[6] MSE was normal except for being sarcastic and had no side effects to medications, January 23, 2007[7] MSE was unchanged and she reported sleeping, appetite and energy were okay and had been exercising, February 16, 2007 she reported mood was stable and not having mood swings as often and symptoms appeared stable, February 27, 2007[8] she reported being depressed but had no panic attacks and wanting to hurt herself and MSE revealed only reported low energy and increased sleep and appetite, March 8, 2007 she reported doing much better, denied any suicidal ideation and had increased her social contact, March 14, 2007 she denied any suicidal ideation, March 15, 2007[9] she reported doing better and MSE was normal, April 2, 2007 she reported her mood was stable and had no angry spells, April 17, 2007 she reported a stable mood and no crying spells or angry mood swings and MSE was normal,[10] June 14, 2007 reported suicidal thoughts but no plan and MSE revealed only tearfulness, June 21, 2007 reported being depressed but denied suicidal ideation, August 20, 2007 she was doing okay and MSE was normal except reported

---

[4] Plaintiff argues the ALJ ignored or mischaracterized the treatment notes from Dr. Long. The treatment notes in contention are noted below.

[5] Plaintiff also notes her hospitalization due to suicidal ideation with a plan to overdose on medications in October 2006.

[6] Plaintiff also notes reports of social anxiety and easily angered.

[7] Plaintiff also notes she presented as tearful and upset.

[8] Plaintiff also notes reports of suicidal thoughts.

[9] Plaintiff also notes reports of a panic attack.

[10] Plaintiff adds May 15, 2007 notes indicate she was experiencing increased anxiety, mood swings, anger, and paranoia.

8

> occasional lows, September 6, 2007 she reported doing well, no panic attacks, denied sadness and was responding well to medications, October 11, 2007 she reported mood was stable and no suicidal ideation, anger and anxiety were okay, and MSE revealed only somewhat blunted affect, December 4, 2007 mood and sleep okay, no suicidal ideation, and restricted affect/mood, January 3, 2008 was feeling depressed and tearful and MSE revealed somewhat blunted affect and tearfulness, January 17, 2008[11] complained of depressive symptoms and MSE revealed retarded and restricted affect and suicidal ideation but no plan, January 29, 2008 she had minimal improvement in her depression and no suicidal ideation, and February 19, 2008 she reported mood was stable, depression subsiding and had angry spells and feelings of sadness (Exhibits 224F-244F & 254F-270).

(CAR 19-20).

Dr. Long completed a Mental Residual Functional Capacity Questionnaire on January 17, 2008. Dr. Long opined that plaintiff was seriously limited, but not precluded in her abilities to remember and carry out short and simple instructions, work in coordination with or proximity to others, be aware of normal hazards, interact appropriately with the general public, and maintain socially appropriate behavior; was unable to meet competitive standards related to remembering work-like procedures, making simple work-related decisions, asking simple questions or requesting assistance, getting along with co-workers, responding appropriately to changes in a routine work setting, and adhering to basic standards of neatness and cleanliness; and had no useful ability to function related to maintaining attention for two hour segments, maintaining regular attendance, sustaining an ordinary routine without special supervision, completing a normal workday and workweek, accepting instructions and responding appropriately to criticism, dealing with normal work stress, traveling to unfamiliar places, and using public transportation. (CAR 191-92). Dr. Long based these limitations on plaintiff's inability to organize herself. (CAR 192). He also noted plaintiff "is almost catatonic. Limited ability to engage with others. Profoundly depressed and blunted [with] psychomotor

---

[11] Plaintiff also notes she was profoundly depressed and at risk for hospitalization, having crying spells, recurrent thoughts of dying, feelings of inadequacy, and decreasing social contact and isolating.

retardation." (CAR 191).  Finally, Dr. Long opined that plaintiff's functional limitations are markedly related to activities of daily living and maintaining social functioning; extreme related to maintaining concentration, persistence or pace; and that plaintiff had one or two episodes of decompensation within a 12-month period, each of at least two weeks duration. (CAR 192).

After setting forth a full summary of the medical evidence in the record, the ALJ determined:

> the medical opinions contained in the psychiatric CE, orthopedic CE and SA determinations were given controlling weight as they were consistent with the overall record, including the claimant's daily activities and diagnostic testing of her spine.
>
> The record contains no physical medical opinions from a treating physician or source.
>
> As to the medical opinions of Dr. Long, the undersigned accorded only minimal weight to those opinions as chart notes from Butte County mental health did not contain findings to support them as indicated by the doctor; they are inconsistent with the medical opinions of Dr. Canty and the SA; and they are not supported by the claimant's daily activities as set [forth] in the record.
>
> In sum, the above residual functional capacity assessment is supported by the SA physical and mental determinations, the medical opinions in the consultative evaluations, the claimant's daily activities, and chart notes from her treating sources.

(CAR 22).

Plaintiff's arguments that the ALJ failed to provide proper reasons for rejecting Dr. Long's opinion are not supported by the evidence.  While the undersigned agrees that the ALJ's summary of Dr. Long's treatment notes may not have been exhaustive, the summary is a decent representation of the treatment Dr. Long provided and the symptoms plaintiff presented at the time.  The undersigned finds no error with the ALJ's determination that Dr. Long's opinion, that plaintiff is almost catatonic and severely limited in all abilities, is not supported by his treatment notes.  The record indicates that plaintiff has had times where she has had thoughts about suicide, including her hospitalization in 2006, and has had ups and downs in her treatment especially when her medication has been altered, but there is no support for the opinion that

plaintiff is catatonic.  As Dr. Long's opinion is contradicted by that of the examining physician, Dr. Canty, the ALJ had to resolve that conflict, which was done without legal error.  The reasons the ALJ provided for discounting Dr. Long's opinion were specific and legitimate, and supported by the record.

To the extent plaintiff argues the opinion of Dr. Canty, and the State Agency physicians' opinions which relied thereon, were stale and unreliable, the undersigned does not agree.  Dr. Canty completed an examination of plaintiff, and relied on the results of that examination to render his opinion.  His opinion was based on independent clinical evidence.  Plaintiff's argument is essentially that the ALJ had a duty to develop the record further.  The duty to develop the record is triggered where the evidence is ambiguous or the ALJ finds the record is inadequate.  See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001).  Neither is evident in the record before the court.  The evidence is neither ambiguous nor inadequate.  Rather, the ALJ had sufficient, albeit contradictory, medical opinions to rely on, and adequately resolved the conflict.

The court determines that the reasons ALJ provided for rejecting plaintiff's treating psychiatrist's contradicted opinion were specific and legitimate, and were supported by substantial evidence.  Thus, the ALJ did not err in his treatment of the medical opinions in the record.

### B. PLAINTIFF'S CREDIBILITY

The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons.  See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996).  An explicit credibility finding must be supported by specific, cogent reasons.  See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.  See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony.  See id.  Moreover, unless there is affirmative

evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing."  See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof.  Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom.  By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions.  See Bunnell, 947 F.2d at 345-47.  In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms.  See Smolen, 80 F.3d at 1284 (citations omitted).  It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).  If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made.  See

Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

Here, the ALJ found plaintiff's allegations regarding her functional limitations not fully credible due to the following:

> The undersigned now considers the claimant's subjective complaints as required by the Regulations and Social Security Ruling 96-7p, noting she alleges major depression, hallucinations, discomfort in public or with strangers, neck and back pain, paranoia, mood swings, anxiety, leg pain, bipolar, suicidal ideation, and herniated discs in the neck protruding and causing arm pain and severe headaches. She testified that she has not looked for work since being fired from her last job due to stress and pain that has gotten worse; she alleged her pain was mostly in her neck, shoulders and between her shoulder blades; she testified to being hospitalized once for a suicide attempt but did not remember the date/year and has not been hospitalized for any other condition; she also alleged that it was hard for her to work due to chronic pain and a low stress tolerance; she alleged getting impatient due to her depression and some days does not want to go out in public; she alleged not being able to lift more than 15 pounds due to her neck and shoulder problems and can walk 15 minutes; and she takes Vicodin three times a day and also Ibuprofen.
>
> The record documents her daily activities include reading, watching movies, preparing meals, doing her laundry, driving, paying bills, shopping, watching TV, bicycle riding, unloading the dishwasher, and visiting (Exhibits 13E-28E).
>
> . . .
>
> Next, her mental complaints, likewise, cannot be fully credited as the SA determined January 4, 2007 she could have limited public contact and could adapt when requested (Exhibits 72F-89F & 206F-207F).
>
> Dr. Canty's psychiatric CE September 18, 2006 further erodes her mental complaints as daily activities included managing her own chores and money, socializing with her boyfriend, fishing, going to movies, reading self-help books, and doing puzzles; the MSE was normal, except for reported chronic irritability but during the interview appeared happy with a full affect; GAF was rated at 60; and the functional assessment indicated she could manage money, would not work successfully with the public, could get along with a few co-workers and supervisors and seemed friendly, may not be able to work in a heavily male environment, should do low stress nonpublic work, emotional symptoms would not prevent her from attending work that was appropriate, and if she attempted high stress or inappropriate work her irritability would flare-up quite dramatically (Exhibits 68F-71F).

(CAR 21).

///

1         The ALJ then again summarized plaintiff's treatment notes from Butte County
2 mental health, similar to that set forth above, and those from Del Norte Clinics. Based on the
3 above, the ALJ found "her mental complaints partially credible." (CAR 22).
4         Plaintiff contends the ALJ erred in finding her mental complaints only partially
5 credible. Plaintiff claims the ALJ used only isolated medical records to determine credibility,
6 and that her limited daily activities are an insufficient basis to support that determination.
7 Defendant counters that the ALJ may properly rely on medical evidence and plaintiff's activities
8 of daily living in assessing plaintiff's credibility.
9         The undersigned agrees that the ALJ provided sufficient reasons for discounting
10 plaintiff's credibility. Specifically, the ALJ found an inconsistency between the symptoms
11 alleged and the treatment received. The ALJ supported this reason with a summary of the mental
12 health treatment plaintiff received, not isolated medical records as plaintiff contends. In addition,
13 the ALJ found an inconsistency between the limitations alleged and plaintiff's daily activities,
14 including, *inter alia* reading, watching television and movies, preparing meals, driving, paying
15 bills, shopping, and visiting. As stated above, the court defers to the Commissioner's discretion
16 if proper reasons are provided. Given the proper deference, the court finds no error in the ALJ's
17 credibility determination.
18         As the court determines the ALJ did not err in relying on the consultative
19 examiner's opinion nor in his credibility determination, there is no basis for finding an error with
20 the ALJ's RFC or determination that plaintiff can perform work existing in the national
21 economy.
22 / / /
23 / / /
24 / / /
25 / / /
26 / / /

## IV.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED that:

        1. Plaintiff's motion for summary judgment (Doc. 20) is denied;

        2. Defendant's cross-motion for summary judgment (Doc. 21) is granted; and

        3. The Clerk of the Court is directed to enter judgment and close this file.

DATED:  March 28, 2012

                                                                                                                                  */s/ Craig M. Kellison*
                                                                                                                            **CRAIG M. KELLISON**
                                                                                                                            UNITED STATES MAGISTRATE JUDGE